No. 13,499.

ROYAL TIGER MINES COMPANY *v.* AHEARN.

(47 P. [2d] 692)

Decided June 17, 1935. Rehearing denied July 15, 1935.

Mr. WARWICK M. DOWNING, Mr. RICHARD DOWNING, for plaintiff in error.

Mr. BARNEY L. WHATLEY, for defendant in error.

*In Department.*

MR. JUSTICE YOUNG delivered the opinion of the court.

MRS. J. B. Ahearn was plaintiff and the Royal Tiger Mines Company defendant in the lower court, and they will be so designated in this opinion.

Plaintiff sued defendant on an assigned claim of her husband, J. B. Ahearn, alleged to be for a balance of wages due him for working in the defendant's mine. She recovered judgment and defendant brings the case here on writ of error.

The facts were stipulated in the lower court, and, so far as here material, are as follows: J. B. Ahearn was one of seventy-nine employees of the defendant company. In the summer of 1931 the company was in financial straits. The price of lead and zinc was so low that operation of its mine was unprofitable, and the company was on the verge of discontinuing operations. At this juncture the employees addressed the following communication to the president of the company:

"Tiger, Colo., Aug. 11, 1931.

"John A. Traylor, President, The Royal Tiger Mines Company, Tiger, Colo.

"Dear Mr. Traylor:

"We, the undersigned employees of the Royal Tiger

Mines Company, understanding and appreciating the difficulties in your carrying on the financing necessary to bring the mill into production, and being not only desirous of aiding you and the company, but avoiding, if it lies within the range of our powers, a shut-down and a lay-off of men, agree with you and the company as follows:

"(a) We will continue giving our best efforts in the carrying on of the work to completion and will be willing to accept our pay whenever it is convenient for you to pay us, and hereby waive any and all legal rights that we have, or might hereafter have, to force the company to pay us overdue wages.

"In simpler terms, we are taking such chance with you as we can afford, without any liability attaching to you or the company in the event that extreme conditions might arise, where you found it impossible to pay us.

"(b) It is understood that we are at liberty to quit the job at any time should we so elect, and take on a job elsewhere, or take a lay-off, in which event we would not lose our right to receive any pay due us at such time as the company was in a position to pay us; and neither will this affect our standing with the company.

"(c) It is understood that we may have trade at the Tiger Mercantile Company in an amount of forty per cent (40%) of our wages, or forty (40) per cent in cash. In the case of men living at the boarding house, the allowance may apply to the payment of their board, and any difference may be obtained in cash, and it is further understood that the company will adjust where conditions require so that, at least, none of us may go hungry.

"(d) It is further understood and agreed by us that our continuing in the employ of the company is subject to the same conditions heretofore prevailing; that is, that we may be laid off or discharged as in the regular course of business, but this would not prevent our receiving payment for services rendered, if and when the company is ready to pay.

"(e) We further understand that the company will

make no charge for rent and will make an average credit to us for our normal consumption of electric current during the time that it is necessary to carry on under this agreement.

"J. B. Ahearn, Pres. Tiger Club."

The communication also was signed by the seventy-eight other employees. The signing of the foregoing letter by J. B. Ahearn was admitted. The company accepted the proposition and operated its mine for approximately one year under the plan outlined in the letter. It was further stipulated that $448.72 was the amount of wages earned by Ahearn and not paid to him under the plan set forth in the foregoing letter; that the claim had been assigned to plaintiff; that forty per cent of the total wages earned by Ahearn had been paid to him; and that each month charge slips were furnished plaintiff's assignor by the company showing the number of days he had worked, the total amount of his earnings for the month, the amount of forty per cent thereof, which was paid to him, and the amount of the remainder placed to his credit; that "the amount of plaintiff's [Ahearn's] wages, less credits thereon, is not in dispute," and that "the only question is whether the said agreement and the said letter are valid and binding so that the defendant, having paid the forty per cent mentioned therein, ought not to have judgment against it at this time for the balance of wages, which defendant claims are not now due and payable." It was further stipulated that the company on October 9, 1933, the date of the stipulation, owed taxes amounting to $49,269.58; that it owed the Public Service Company of Colorado $8,344.01, to secure the payment of which, that company had theretofore filed a lien in the office of the county clerk which was in process of foreclosure by suit. It was further stipulated that Mr. Traylor, the president of the company, would testify that the company owed in addition to note holders and on open account, over $100,000, including the balance of wages to employees; that the company had no cash; "that

the assets of the company, however, have a fair value of much more than the amount of all of its indebtedness, and that the company cannot pay the amount claimed * * * without borrowing the money or selling some of its capital assets, subject to the liens thereon if that be possible, and that it is not now convenient for the defendant to pay the plaintiff on the Second Cause of Action and has not been convenient for it to pay at any time since said agreement of August 11, 1931. * * *''

Plaintiff contends that an agreement to wait until it is convenient for the debtor to make payment is an agreement to wait a reasonable time, and argues that as the last of the services had been rendered on the 10th day of August, 1932, a reasonable time had elapsed when this suit was instituted March 2, 1933. Plaintiff also contends that the contract here involved is void under sections 4226-4233, C. L. 1921, denominated ''Semi-monthly Pay Day Act,'' which requires that payments be made to miners in cash, semi-monthly, and providing that any contract, ''the provisions of which shall be in violation * * * of this act shall be * * * void.''

It will be observed that the defendant admits the work was performed, the wages sued for earned, the assignment of the claim to plaintiff, and the company's obligation to pay at some time when convenient. By answer it alleges that it is not now, and never has been, convenient for it to pay. The plaintiff by replication denies all allegations of new matter, and thus the issue is raised as to whether it was convenient to pay the claim at the time suit was brought. In other words, in effect, a plea in abatement was offered and issue joined thereon. The court found generally for plaintiff.

It is our duty to resolve all proper deductions to be made from the record in favor of the judgment, and we must therefore determine from the facts contained in the stipulation, or such as may be considered evidence bearing on the question, whether it was convenient for the company to pay. To do this it is first necessary to

construe the term of the contract relating to the time of payment; namely, what time for payment is fixed by the phrase, "whenever it is convenient for you to pay us."

■ The stipulation that Mr. Traylor, president of the company, would testify that at the time it was entered into it was not, and never had been, convenient for the company to pay, was merely a stipulation that he would testify to the conclusion to be drawn from facts in evidence. Under the issues made by the pleadings this was a matter for the court to determine from the facts in evidence, and not one to be settled by conclusions of the witness. The stipulation amounted to nothing more than that Mr. Traylor would testify to his conclusion that the amount claimed was not due.

■ As we view that part of the contract providing for payment when convenient it does not fix an indefinite period of time for the running of the claim, neither does it leave the time solely to be determined by the company. "When convenient for the company to pay" must be construed as imposing an obligation to pay at some time, for if it means merely an option to pay at the sole determination of the company, then the issue would be as to the existence of a valid claim, and not as to the time of payment. Defendant in its brief states: "We concede that whenever the financial condition of plaintiff in error so changes, that it will be convenient for it to pay the sixty per cent, then according to its contract, it must do so." In the stipulation, with respect to the issue it is said: "The only question is whether the said agreement and the said letter are valid and binding so that the defendant, having paid the forty per cent mentioned therein, ought not to have judgment against it at this time for the balance of wages, which defendant claims are not now due and payable. If the court determines such balance of wages is now due and payable, the principal amount thereof is four hundred thirty-eight and 72/100 dollars ($438.72); on the other hand, if the court determines that the above contract is valid and Mr.

Ahearn was entitled, under said agreement and letter, to only forty per cent of wages, then defendant, having paid such forty per cent, the judgment on the second cause of action should be for the defendant, *but without prejudice to a later action.*" (Italics ours.)

 From the foregoing it is clear that the company recognizes the claim as being valid and payable at some time. It then becomes necessary to determine as a question of law what evidence is admissible to establish when the time for payment has arrived, and whether there is any such evidence in the record. The issue raised by the pleadings being one of the time of payment, we must consider it as having been determined by the trial court if there is any competent evidence bearing on that issue.

A reasonable construction of the term, "whenever it is convenient for you to pay us," of course necessitates a consideration of the rights of plaintiff as well as those of defendant. The work to be performed was partly exploratory, and its purpose was to determine whether ore could be found with a gold, as well as zinc and lead, content. Such development work undoubtedly entered into and contributed to the capital assets of the company to the extent of its agreed value less the forty per cent returned to the employees in wages, or to the extent of sixty per cent of its value, the amount sued for. Plaintiff's assignor having contributed to the capital assets of the company, and plaintiff's demand having been recognized by defendant as valid, and payable at some time, her claim was such that at some time she would be entitled to have it satisfied out of the assets of the company. In order to fix that time the court might have admitted under the issues evidence of the general prospects of the zinc and lead mining business; the prospect of discovery of ores with a gold content; the value of the company's property; the amount of its indebtedness; its available funds for operating the mine; the accumulation of liens, and taxes; the pendency of suits; in short, any and all

facts bearing on the question of whether the prospect of the mine operating in the future as a business enterprise was reasonably certain or questionable and remote. If from such evidence the court found that there was a reasonable prospect of the company becoming a going concern before the destruction of its assets by the accumulation of taxes, debts, interest and liens, then the convenient time for payment would be when the business again became a going concern. But if defendant's prospects of again becoming a going concern, before its assets were destroyed or so impaired as to make recovery by plaintiff questionable and uncertain, are remote and not reasonably to be anticipated under all the circumstances, then plaintiff should be permitted to look to the company's capital assets, to which her assignor contributed as much proportionately as did those who loaned money or supplied electric current for the operation of the mine; her claim should be held due and she should be given judgment, for it would then be as convenient for the company to pay, so far as humanly possible to determine, as at any time in the future, and as convenient to pay her as to liquidate the claims of others with whom she should stand on an equal footing.

Not all of the matters indicated as admissible as having a bearing on the issue were before the court. They were not contained in the stipulation nor offered in evidence. Some of them were. From the stipulation it appears that the president would testify to the facts that the company was not operating, had no money, was borrowing money to have the property guarded, that it owed over $100,000, that the Public Service Company had filed a lien and had begun suit to foreclose it, and that the taxes, as of October 9, 1933, more than a year after work ceased —and more than two years after operation under the contract began—were $49,269.58, all of which facts constituted competent evidence bearing upon the question of the future prospects of the corporation becoming a going concern. Some competent evidence being before the court

on the issue raised by the pleadings, and no other being offered, the defendant cannot object that the issue was determined by the court or that it was determined against it. To support the judgment, we must assume that the trial court found whatever it might have found from any competent evidence before it under the issues raised by the pleadings.

In the view we have taken of the case it is unnecessary to determine the question raised by plaintiff concerning the invalidity of the contract under the semi-monthly pay day statute, or the question raised by defendant as to the constitutionality of that statute if the contract be held by us to be void. We assume the validity of the contract and hold, under such assumption, that plaintiff was entitled to recover under the contract.

The judgment is affirmed.

MR. CHIEF JUSTICE BUTLER and MR. JUSTICE HOLLAND concur.